STATE OF INDIANA *v.* OLLIE QUACKENBUSH ET AL.

[No. 1-873A148.  Filed November 29, 1973.]

*Theodore L. Sendak,* Attorney General, *Robert A. Zaban,* Deputy Attorney General, for appellant.

*Donovan & Emery,* of Bedford, for appellees.

LOWDERMILK, J.—Plaintiff-appellant, State of Indiana (State), brought its action against Ollie Quackenbush, et al. (Quackenbush), to appropriate certain real estate. The land condemned was four acres owned by Quackenbush for improvement to State Road 37 (Bedford By-Pass.)

The court appointed appraisers who allowed total damages of $34,000 and the State filed its exceptions to the appraisers' report and requested a trial by jury, which was followed by Quackenbush's objections to the appraisers' report and demand for trial by jury.

James Anderson was qualified as an expert witness in his field of real estate by Quackenbush in his case in chief. While laying the foundation for the introduction of a "comparable sale" into evidence the State objected to any evidence concerning the value of that property on grounds that its value increased or decreased or changed in some way by the actual location of the project for which Quackenbush's property was being condemned. The court overruled this objection.

The court permitted the State to ask preliminary questions and the witness was asked by the State whether in his opinion the location of the highway project adjacent to the comparable sale would affect the value of that property in any way. Quackenbush again objected and the objection was overruled by the court. The State re-stated its question and the witness answered "In some degree" after which the court admonished the jury to disregard the answer, as the court at that time said, "I meant to sustain that objection . . ." The court then permitted the witness to testify as to the price of the "comparable sale" over the State's objection.

The witness Anderson was laying the groundwork for introduction of other "comparable sales" into evidence and the State objected for the reason that the "comparable sales" were affected by the project for which the landowners' property was being condemned. During cross examination of Mr. Anderson the State interrogated him to determine if, in his opinion, the comparable sales about which he testified would have gone for the same sales price without the construction of the highway. This question was objected to by Quackenbush and was by the court sustained.

The jury returned its verdict in favor of Quackenbush in the sum of $32,500 and judgment of appropriation of the real estate and the award of damages was duly entered thereon.

The State timely filed its motion to correct errors which was by the court overruled.

The pertinent parts of the motion to correct errors are as follows, to-wit:

"The Court committed error herein by sustaining an objection to the State's question asking James Anderson, an expert witness, whether the location of the highway project requiring the condemnation of defendants' property affected the value of the property sold by James Anderson and others to Marathon Oil Company in March, 1971 and put into evidence as a comparable sale.

* * *

The Court committed error herein by sustaining an objection to the State's question directed to James Anderson which sought to elicit whether, in his opinion, the sales prices of the transactions, upon which he based his opinion of the fair market value of the defendants' property in condemnation, would have been the same without the project for which the property was being taken."

We shall treat these together under Rule AP. 8.3 (A) (7).

Witness Anderson owned a tract of real estate which was near the Bedford By-Pass and was adjacent to the Quackenbush property. Anderson had sold a parcel of the land to

the Marathon Oil Company for $150,000, when he knew the approximate location of the highway project adjacent to the property he sold when the sale was made and when the Marathon Oil Company was interested in the highway project's location at the time of the sale, and Mr. Anderson said ". . . to the best of their ability they [Marathon] tried to determine where the highway would go."

Witness Anderson testified on cross examination that the property sold to Marathon and the property sold to Irving Eisenbaum were originally purchased by him as one tract in 1965 or 1966, before the new highway was announced. The new highway later ran adjacent to these two properties. Witness Anderson further testified on cross examination that the Eisenbaum purchase was in 1968 after the new highway was announced.

Quackenbush objected to the State's question of Mr. Anderson of how much he paid for the property in 1965 or 1966 that he sold in 1968 to Mr. Eisenbaum after the new highway was announced, which objection was sustained by the court.

The court further sustained Quackenbush's objection to the State's question asking Mr. Anderson whether, in his opinion, those comparable sales in which he had been a vendor would have had the same sales price without the highway construction.

The State contends that the court erred in denying the State an opportunity to establish that the properties offered by Quackenbush as "comparable sales" had been increased in value by the project for which the subject property was condemned; and therefore the State was not permitted to show the similarity, and the jury was permitted to consider an increase in the value of the landowners' property in determining the value of the subject property.

As authority for this contention the State relies on the case of *State* v. *Sovich* (1969), 253 Ind. 224, 252 N.E.2d 582. Our Supreme Court, in *Sovich*, said:

". . . it is c(1)ear that the weight of authority holds that neither an increase nor a decrease in the market value of the property sought to be taken, which is brought about by the same project for which the property is being taken, may be considered in determining the value of the property. . . ."

In the case at bar the market value of the property sought to be taken was being established by showing the values of comparable property. It is our opinion that the reasoning in *Sovich, supra,* which does not allow an increase or decrease in the market value brought about by the same project for which the property is being taken, would apply to property whose value is being used to show the market value of property sought to be taken. Thus, evidence of comparable property whose value was increased or decreased as a result of the same project for which the property sought to be taken would be inadmissible. In the preliminary questions asked Mr. Anderson by the State, the State was protesting the value of the comparable property being introduced into evidence. Quackenbush objected on the grounds that there was no evidence that the value of the property was influenced by the location of the highway and his objection was sustained. However, the State then asked:

"Q. Mr. Anderson, in your opinion would the location of this highway adjacent to the Marathon Oil Company property affect the value of that property in any way?"

The answer to this question would firmly establish whether the location of the highway did or did not affect the value of the comparable property. It was paramount that this information should have been put into evidence so that the court might determine if the property referred to in the question was comparable to Quackenbush's land which was being taken in order that the court could rule on the admissibility of the evidence called for by the question.

Under the holding in *Sovich, supra,* it is our opinion that

the trial court should have permitted witness Anderson to have answered the question in order that he (the trial judge) would have had all necessary information needed by him to pass on the admissibility of evidence of comparable property. Although it is within the court's discretion to determine whether or not testimony concerning the sale of any particular comparable property is admissible, we are of the opinion that under the evidence and facts in the case before us that the trial court abused its discretion to the prejudice of the State in refusing to allow the witness to answer the questions and his rulings on the evidence were contrary to law.

Appellees contend that the State did not save its question because the State made no offer to prove when the objection to the State's question on cross examination was sustained.

Quackenbush relies on Rule TR. 43(C) and the case of *Crothers* v. *City of Fort Wayne* (1973), 155 Ind. App. 153, 291 N.E.2d 702, which states:

"Appellants allege that the trial court erred in refusing to permit one of the witnesses to answer certain questions on cross-examination. Such error, if any, has not been preserved for appeal because no offer to prove was made to the trial court."

Quackenbush further claims that the State should have used the means of discovery available to it to be safeguard against the element of surprise. It is our opinion that although the State might have been in better position to try its lawsuit had it done so, it is not required to use discovery unless it so desires. In fact, the State had every right under the Rules of Indiana Procedure to make its proof of the question involved by the witness Anderson.

The case of *Crothers* v. *City of Ft. Wayne, supra,* relies upon the case of *State* v. *Lonergan* (1969), 252 Ind. 376, 248 N.E.2d 352. However, *Lonergan* does not support the state-

ment of law as stated in *Crothers*. In *Lonergan* our Supreme Court said, on page 378:

"... It should be noted that the witness was the State's *witness on direct examination*, and as such, presumably the exact testimony sought to be elicited was known to the examining attorney. Thus the proper trial procedure dictates that an offer to prove must be made following the trial court's ruling on objection. In such a case both the trial court and this court would then have been in a position to determine the admissibility and relevance of the testimony sought to be elicited.

\* \* \*

... *The weight of authority rests with the appellee. The appellant has failed to properly present the question on appeal in its motion for new trial for the reason that it failed to make an offer to prove. ...*" (Our emphasis.)

It is axiomatic that an offer to prove is only proper on the testimony of a witness on direct examination.

In *Swift* v. *State* (1961), 242 Ind. 87, 176 N.E.2d 117, the court, in speaking of offers to prove, stated:

"Appellant's objection to the question for the reason 'that the State had not laid a proper foundation for an offer to prove' was not a valid objection as this question was asked on cross-examination, *and it is well settled that offers to prove are not required on cross-examination.*" (Our emphasis.)

The latest authority we can find thereon is *Sipes* v. *State* (1973), 155 Ind. App. 380, 293 N.E.2d 224, which held that an offer to prove was proper only in introducing testimony on direct examination.

Quackenbush further contends that any error assigned herein was rendered harmless by the giving of State's Instruction No. 13, which reads as follows:

"I instruct you that neither an increase nor a decrease in the market value of the property sought to be taken, which is brought about by the same project for which the property is being taken, may be considered by you in deter-

mining the value of the property as it existed before condemnation."

Quackenbush cites and relies upon the case of *Central Indiana Railway Co.* v. *Anderson Banking Co.* (1968), 143 Ind. App. 396, 240 N.E.2d 840, at page 850, in which the court stated that even if the admittance of such evidence be considered to establish negligence and it was, therefore, error, the court was of the opinion that the later instruction by the court cured such an error. The court further said there was a presumption that the jury followed the instruction to disregard improper evidence. That case is distinguishable from the case at bar for the reason that in *Central Indiana* the court was discussing a matter of erroneously admitting evidence into the record, while in the case at bar the error was in the court's refusal to admit proper evidence into the record. The court, having excluded proper evidence, has no possible way to correct that error by an instruction for the reason that the jury has no way of knowing what the proper evidence would have been had it been permitted to come into the record.

State's Instruction No. 13 is almost a direct quote from the *Sovich* case, and we agree that it is the law. However, it is not pertinent to specifications 2 and 6 of the motion to correct errors which we are passing on in this opinion, and said instruction did not in any way cure the errors committed by the trial judge in the exclusion of evidence pertaining to the increase or decrease in value of the comparables on account of the new highway project in determining the value of the condemned property.

The court having committed reversible error as set forth in specifications 2 and 6 of the State's motion to correct errors, it is unnecessary for this court in write on further specifications of error.

Cause reversed and remanded for a new trial.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 303 N.E.2d 830.